IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| STEPHANIE R. REYNOLDS,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION DENYING DISABILITY BENEFITS TO PLAINTIFF<br><br>Case No. 2:16-cv-01210-BCW<br><br>Magistrate Judge Brooke C. Wells |

Plaintiff, under 42 U.S.C. § 405(g), seeks judicial review of the decision of the Acting Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act). After careful review of the entire record, the parties' briefs, and arguments presented at a hearing held on February 23, 2018, the undersigned concludes the Commissioner's decision is supported by substantial evidence and free of harmful legal error and is, therefore, AFFIRMED.

This Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). The Court may neither "reweigh the evidence [n]or substitute [its] judgment for the [ALJ's]." *Id.* (citation omitted). Where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Page 1

## DISCUSSION

In this case, Plaintiff was 46 years old in September 2013, when she claimed disability based on arthritis, chronic pain, sleep apnea, depression, anxiety, and attention deficit hyperactivity disorder (ADHD) (Administrative Transcript ("Tr.") 153, 182). She completed the 11th grade and had past relevant work as a warehouse worker (Tr. 183-84). In evaluating her case, the ALJ followed the familiar five-step sequential evaluation process (Tr. 17-30). *See generally* 20 C.F.R. § 404.1520(a)(4). The ALJ found that Plaintiff had the severe impairments of rheumatoid arthritis, degenerative disc disease, chondromalacia patella, obstructive sleep apnea, affective disorder, ADHD, and anxiety disorder, but that her impairments did not meet or equal the severity of a listed impairment (Tr. 19-22). The ALJ then found Plaintiff retained the residual functional capacity (RFC) to perform a restricted range of unskilled light work (Tr. 22-28). Considering this RFC, the ALJ determined that Plaintiff was capable of performing work existing in significant numbers in the national economy (Tr. 28-30). The ALJ thus concluded that Plaintiff had failed to establish disability under the standards of the Act (Tr. 30).

I. **The ALJ reasonably considered Plaintiff's mental and physical impairments in assessing her RFC for unskilled light work**

Plaintiff first asserts the ALJ "erred by not properly considering all of [her] mental and physical impairments" (Plaintiff's Brief ("Pl. Br.") 10). Specifically, Plaintiff challenges the ALJ's evaluation of her rheumatoid arthritis, peripheral neuropathy, sleep apnea, and mental impairments (*id.* at 10-15). The Commissioner, however, argues that the record did not support any additional limitations related to Plaintiff's arthritis, peripheral neuropathy, sleep apnea, or mental impairments, and that the ALJ reasonably considered all of her impairments in assessing her RFC (Defendant's Brief ("Def. Br.") 8).

For example, Plaintiff complains the ALJ's RFC "does not include significant manipulative limitations" to account for her rheumatoid arthritis (Pl. Br. at 11). However, the Court finds that the majority of the medical evidence and medical source opinions support the ALJ's determination that Plaintiff remained able to frequently handle and finger despite her arthritis (Tr. 22). Rheumatologist Dr. Lundberg often noted that Plaintiff's hands and wrists looked normal and she showed "full" fist formation (Tr. 519, 571, 681, 688, 692, 696). Plaintiff's primary care physician, Dr. Lundsberg, opined that Plaintiff could perform both fine and gross manipulation frequently (Tr. 553-55). And reviewing state agency physicians Drs. Rothstein and Huebner opined that Plaintiff would not have any manipulative limitations whatsoever (Tr. 79, 93). Based on this record, the ALJ reasonably concluded that Plaintiff retained the ability to frequently handle and finger. *See* 20 C.F.R. § 404.1546(c) (an ALJ is responsible for assessing RFC); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.").

Plaintiff next alleges the ALJ "erroneously found [her] peripheral neuropathy to be a 'non-severe impairment'" (Pl. Br. 12). A severe impairment, however, is one that "significantly limits" an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). Here, the Court finds little evidence demonstrating that Plaintiff's peripheral neuropathy "significantly" limited her ability to perform basic work activities. Instead, an EMG study showed she retained intact sensation to light touch, her nerve conduction studies were all normal, and there was "no electrodiagnostic evidence of a . . . neuropathy . . . in either lower extremity" (Tr. 282-84). And while she complained of numbness in the soles of her feet on occasion, her physical examination actually revealed that her neurological examination was normal with "light touch intact on soles" (Tr. 601). Further, physician assistant ("PA") Johnson,

Page 3

the only treatment provider to expressly assign limitations based on Plaintiff's peripheral neuropathy, opined that Plaintiff remained able to stand for four hours at one time and up to six hours in a workday, which was consistent with the ALJ's RFC assessment (Tr. 548-49). Thus, Plaintiff has failed to support her claims that peripheral neuropathy would "significantly limit" her ability to perform basic work activities, and the Court concludes the ALJ reasonably determined that this was not a severe impairment. *See* 20 C.F.R. § 404.1520(c); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (at step two, a claimant has the burden to "demonstrate an impairment or combination of impairments that significantly limits the claimant's ability to do basic work activity." (citing 20 C.F.R. § 404.1520(c))).

Plaintiff also complains the ALJ did not account for her sleep apnea and related fatigue in assessing her RFC (Pl. Br. 13). However, the ALJ included limitations to account for Plaintiff's mental impairments, including that she could only make "simple work-related judgments and decisions," could "understand, remember, and carry out only short and simple instructions," and could perform "goal-oriented work but not fast-paced work" (Tr. 22). Plaintiff further argues that three of her doctors opined she would have "at least moderate to severe fatigue and malaise throughout the day" (Pl. Br. 13 (citing Tr. 547-49, 553-55, 568-70)). However, Dr. Lundberg, Dr. Lundsberg and PA Johnson actually opined that Plaintiff's fatigue and malaise would be no more than moderate (Tr. 548, 554, 569). And Dr. Lundsberg explicitly opined that Plaintiff's mental limitations generally did not preclude her from performance of any aspect of a job, and that she would only be precluded for five percent of a work day in the area of maintaining attention and concentration (Tr. 550-51). He also did not believe that Plaintiff was unable to obtain and retain work because of her medical impairments and limitations (Tr. 552). Therefore,

the Court concludes that Plaintiff has failed to show that her sleep apnea resulted in any mental limitations beyond those already assessed by the ALJ.

Plaintiff next asserts the ALJ "made contradictory findings regarding the severity of [her] mental impairments" (Pl. Br. 14-15). Plaintiff appears to be asserting that because the ALJ found that she had moderate difficulties in concentration, persistence, or pace at step three of the sequential evaluation process, the ALJ was required to include other, greater mental limitations in assessing Plaintiff's RFC. However, as discussed above, the ALJ limited Plaintiff to only "simple work-related judgments and decisions," understanding, remembering, and carrying out "only short and simple instructions," and performing "goal-oriented work but not fast-paced work" (Tr. 22). This finding is consistent with the ALJ's step three finding. As the Commissioner notes, in assessing Plaintiff with "moderate" limitations in concentration, persistence, or pace, the ALJ expressly stated that these limitations were "not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" (Tr. 22). Further, the ALJ noted that, despite these moderate limitations, Plaintiff remained able to manage her own finances, organize her medication, and follow simple instructions (Tr. 21). The ALJ therefore reasonably concluded that Plaintiff was able to maintain focus, attention, and concentration "sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings" (Tr. 21). *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (rejecting Plaintiff's argument that a limitation to unskilled work cannot accommodate severe mental impairments: "There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations. But in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in

Page 5

concentration, persistence, and pace." (internal citation omitted)); *Bales v. Colvin*, 576 F. App'x 792, 798 (10th Cir. 2014) (unpublished) (affirming the ALJ's decision that Plaintiff was capable of unskilled work despite the ALJ's finding "of a moderate limitation in concentration, persistence, or pace at step three"). Thus, the Court finds the ALJ reasonably considered Plaintiff's mental and physical impairments in assessing her RFC for unskilled light work and Plaintiff has failed to demonstrate that any additional limitations were warranted.

## II. The ALJ reasonably evaluated the medical source opinions

Plaintiff next asserts the ALJ did not appropriately evaluate the medical source opinions (Pl. Br. 15-20). The Commissioner argues that the ALJ reasonably evaluated all of the medical source opinions, and assessed an RFC that took these opinions into consideration (Def. Br. 13-19). The Court finds Plaintiff's claims to be without merit.

The ALJ in this case was faced with several differing medical opinions from treating and reviewing sources regarding Plaintiff's physical and mental abilities. Here, the ALJ weighed each of these opinions and determined that Plaintiff retained the RFC to perform a restricted range of light work, after finding that she was slightly more limited than indicated by the reviewing physicians, but less limited than indicated by her treating physicians. The Court concludes that the ALJ's evaluation of the medical source opinions was reasonable and supported by substantial evidence in the record.

First, the ALJ considered the opinion of primary care physician Dr. Lundsberg that Plaintiff could work four to six hours per day; stand four hours per day; lift five to 10 pounds frequently; and frequently manipulate with her hands (Tr. 27; *see* Tr. 550-55). The ALJ concluded this opinion was entitled to little weight (although portions of the ALJ's RFC assessment were consistent with the opinion, including that Plaintiff could frequently handle and

finger) because it was inconsistent with the objective medical evidence and appeared to rely heavily on Plaintiff's subjective complaints (Tr. 27). The ALJ cited evidence inconsistent with Dr. Lundsberg's opinion, including the normal results from Plaintiff's nerve conduction study; physical examinations showing her joint motion was generally normal and that she had no swelling in her knees, ankles, or feet; her normal neurological examinations; the fact that she retained generally normal range of motion in her spine; her gait and straight-leg raising tests were normal; and that Plaintiff often reported her pain was effectively controlled with medication (Tr. 22-26; *see* Tr. 491-92, 510, 514, 519, 531, 533, 556-57, 559, 601, 641, 645, 667-69, 671-73, 676-77, 692, 696). *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) (unpublished) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting Dr. Wright's opinion.").

Based on the lack of supporting clinical findings, the Court finds the ALJ reasonably concluded that many of the limitations assigned by Dr. Lundsberg were based on Plaintiff's statements instead of the objective medical evidence. *See* 20 C.F.R. § 404.1527(c)(4) (an ALJ must consider whether an opinion is consistent with the record as a whole); *Wilson v. Astrue*, 602 F.3d 1136, 1147 (10th Cir. 2010) (rejecting the claimant's argument that the ALJ's statement that the limitations noted in Dr. Smith's earlier work release "appear[ed] to be based on [Ms. Wilson's] subjective complaints," "was impermissible speculation": "It appears that these statements were merely referencing the absence of objective medically testable physical impairments, not concluding that such an absence was dispositive.").

The ALJ next evaluated the opinion of rheumatologist Dr. Lundberg, who concluded that Plaintiff could sit, stand, or work for two to four hours per day; frequently lift five to 10 pounds;

Page 7

and occasionally manipulate (Tr. 27; *see* Tr. 569-70). The ALJ again determined that this opinion was inconsistent with the objective medical evidence showing that Plaintiff's physical examinations were generally normal or unremarkable as discussed above (Tr. 27; *see* Tr. 491-92, 510, 514, 519, 531, 533, 556-57, 559, 601, 641, 645, 667-69, 671-73, 676-77, 692, 696). The ALJ also noted that this opinion "relie[d] heavily on [Plaintiff's] subjective complaints" (Tr. 27). Dr. Lundberg explicitly admitted that the "abilities" he assessed in the opinion were "based on patients [sic] report" (Tr. 570). The Court concludes the ALJ provided valid reasons for giving less weight to Dr. Lundberg's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *Raymond*, 621 F.3d at 1272; *Wilson*, 602 F.3d at 1147.

The ALJ also evaluated PA Johnson's opinion that Plaintiff could work six to eight hours intermittently; could sit or stand for six hours in an eight-hour workday; and could lift up to 10 pounds frequently but could never perform any manipulation with her hands (Tr. 27; *see* Tr. 548-49). The ALJ gave this opinion little weight, concluding the opinion was inconsistent with the record as a whole, which generally failed to document rheumatoid arthritis flares, as relied upon by PA Johnson (Tr. 28; *see* Tr. 510-17, 531-45, 667-69, 671-73, 676-77). The ALJ also noted that while PA Johnson stated Plaintiff was completely incapable of using her hands, this was inconsistent with the majority of her physical examinations, which demonstrated that her hands and wrists were often normal with no swelling or tenderness (Tr. 28; *see* Tr. 519, 571, 692, 696). Finally, the ALJ noted that there was "no indication in the file that [Plaintiff] require[d] assistance with feeding herself, dressing, toileting, etc.," which would be reasonable to expect if Plaintiff were completely unable to perform any manipulation with her hands, as PA Johnson opined (Tr. 28; *see* Tr. 195, 222 (failing to list any difficulties with personal care), 199 (failing to list any difficulties with "using hands")). The Court finds the ALJ provided valid reasons

Page 8

grounded in record evidence for giving less weight to PA Johnson's opinion. *See* 20 C.F.R. § 404.1527(c)(4); *Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming the ALJ's decision discounting the treating physician's opinion that the claimant had extreme limitations based on the claimant's daily activities, including that she was able to "car[e] for her own personal needs; do [ ] household chores, i.e., dishes, vacuuming; cooking; texting friends; using a computer; driving; grocery shopping; reading; watching television; visiting with friends; attending church on a weekly basis; and, attending church activities one night a week").

Finally, reviewing state agency physicians Drs. Thobe and Rothstein, opined that Plaintiff retained physical abilities consistent with light work (Tr. 78-79, 93). Reviewing state agency psychologists Drs. Huebner and Berkowitz, opined that Plaintiff remained capable of two-to-three step work (Tr. 80, 94-95). The ALJ concluded these opinions were entitled to great weight (Tr. 26-27), although the ALJ assessed a slightly more restrictive RFC than assigned by these physicians and psychologists (Tr. 22). The Court finds that, because these opinions were consistent with the record as a whole, which demonstrated that Plaintiff's mental and physical impairments were not as severe as she claimed, they provided substantial evidence in support of the ALJ's decision. *See* 20 C.F.R. § 404.1527(e)(2)(i) (state agency medical consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation"); *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2008) (a non-examining physician is an acceptable medical source, whose opinion the ALJ is entitled to consider).

**III.    The ALJ's step five finding was supported by substantial evidence**

Plaintiff next argues the ALJ's step-five finding—that she could perform jobs that existed in significant numbers in the national economy given her RFC—was not supported by

substantial evidence (Pl. Br. 20-24). Defendant responds that the ALJ's hypothetical question was consistent with his RFC assessment, and the vocational expert identified jobs that such an individual could perform (Def. Br. 19). Defendant also asserts there was no apparent conflict between the vocational expert's testimony and the *Dictionary of Occupational Titles* (DOT) (Def. Br. 19-21). The Court concludes the ALJ's step five finding was supported by substantial evidence.

Here, the ALJ posed a hypothetical question that reflected all the limitations he found credible and ultimately included in his RFC assessment (*compare* Tr. 64 *with* Tr. 22). In response, the vocational expert testified that such an individual could perform the sedentary unskilled job of call out operator and the light unskilled jobs of office helper and self-service operator (Tr. 65). Because the hypothetical posed to the vocational expert comprehensively described Plaintiff's limitations, the Court finds the ALJ did not err in relying on the vocational expert's testimony to find that Plaintiff could perform other work that existed in significant numbers in the national economy. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

Plaintiff, however, argues the ALJ erred because he failed to resolve a conflict between the expert's testimony and the DOT (Pl. Br. 21). Plaintiff essentially argues that the expert's testimony—based on the ALJ's RFC limitation to simple work—conflicted with the DOT job descriptions for self-service operator and call out operator, because the DOT describes these jobs as having a General Educational Development (GED) reasoning level of three, which is defined as "[a]pply[ing] commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal[ing] with problems involving several concrete variables in or from standardized situations." *See* Dep't of Labor, DOT, App. C, § III (4th ed. 1991), *available at* 1991 WL 688702.

The Court finds that Plaintiff's argument rests on a common misunderstanding of the general educational development (GED) levels in the DOT. Per the DOT, GED "embraces those *aspects of education* (formal and informal) which are required of the worker for satisfactory job performance." DOT, App'x C, 1991 WL 688702 (emphasis added). "This is *education* of a general nature which does not have a recognized, fairly specific occupational objective. Ordinarily, such *education* is obtained in elementary school, high school, or college. However, it may be obtained from experience and self-study." *Id*. (emphasis added).

However, in a recent series of unpublished decisions, the Tenth Circuit has found that GED reasoning levels are unrelated to the mental requirements of a job. *See Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) ("GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job, broken into the divisions of Reasoning Development, Mathematical Development and Language Development."); *Mounts v. Astrue*, 479 F. App'x 860, 868 (10th Cir. 2012) (unpublished) ("Job descriptions in the [DOT] contain several elements required to perform a specific job, including a claimant's GED, which is the level of formal and informal education required to perform a specific job."); *but see Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). The Court agrees with this recent line of reasoning.

However, the Court finds that even the older case law that equates GED levels with mental requirements of certain jobs does not support Plaintiff's position. This is because one of the occupations identified by the vocational expert required only a GED reasoning level of two. *See Office Helper*, DOT No. 239.567-010, 1991 WL 672232. And the ALJ limited Plaintiff to simple tasks and simple work related decisions (Tr. 22). The Tenth Circuit has repeatedly held

Page 11

that reasoning level two is consistent with an RFC limitation to simple tasks. *See Hackett*, 395 F.3d at 1176; *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (even assuming two of three jobs relied on by the ALJ were erroneous, the court affirms the ALJ's decision where substantial evidence showed the claimant could do the third job, and the job existed in significant numbers in the national economy). Thus, the Court affirms the ALJ's finding at step five.

## IV. The ALJ reasonably evaluated Plaintiff's symptom testimony

Finally, Plaintiff alleges the ALJ erred in evaluating her subjective complaints (Pl. Br. 24-26). Defendant responds that the ALJ gave valid reasons for finding that Plaintiff's extreme complaints were not consistent with the record (Def. Br. 22-23). The Court finds the ALJ's evaluation of Plaintiff's testimony should be affirmed.

Here, the ALJ first relied on the objective medical evidence, which, as discussed above, showed that Plaintiff's nerve conduction study was normal; her joint motion was generally normal; she had no swelling in her knees, ankles, or feet; her normal neurological examinations; she retained generally normal range of motion in her spine; her gait and straight-leg raising tests were normal; and she often reported that her pain was effectively controlled with medication (Tr. 22-26; *see* Tr. 491-92, 510, 514, 519, 531, 533, 556-57, 559, 601, 641, 645, 667-69, 671-73, 676-77, 692, 696). Based on this evidence, the ALJ reasonably concludes that the "objective findings fail[ed] to provide strong support for [Plaintiff's] allegations of disabling symptoms and limitations" (Tr. 23). *See* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence"); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988) (upholding an ALJ's credibility finding where, despite his complaints of pain, the claimant demonstrated a satisfactory range of motion for the joints in question); *Megginson v. Astrue*, 489

Page 12

F. App'x 260, 263 (10th Cir. 2012) (unpublished) (the fact that clinical examinations routinely showed a normal gait and full 5/5 muscle strength, grip strength, and range of motion in his right arm undermined the claimant's allegations).

The ALJ also relied on Plaintiff's activities of daily living, finding that they were "inconsistent with [her] allegations of disabling symptoms and limitations" (Tr. 23). For instance, the ALJ noted that Plaintiff remained able to complete household chores, including laundry and cleaning, she had no problems with personal care, she was able to use the computer, prepare meals, drive, go out alone, go shopping, socialize with friends and family, and attend church services (Tr. 21; *see* Tr. 194-200). The record also shows that Plaintiff was able to work at least part-time during the same period of time she alleged that she was completely unable to work (Tr. 556 ("working through a temp service"), 637 ("working part time which does not stress her back"), 657 ("working part time"), 661 ("working part time")). The Court finds that Plaintiff's relatively normal lifestyle provided another valid reason for the ALJ to give less weight to her testimony of disabling limitations. *See* 20 C.F.R. § 404.1529(c)(3)(i) (an ALJ must consider a claimant's activities); *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (ALJ reasonably found a claimant's description of her daily activities did not indicate significant limitations, where the claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat); *Shepherd v. Apfel,* 184 F.3d 1196, 1202 (10th Cir. 1999) (evidence a claimant did mechanic work even after the alleged onset of disability supported a finding of nondisability).

Thus, based on the foregoing, the Court finds the ALJ provided valid reasons for discounting Plaintiff's testimony, and the ALJ's decision is affirmed.

## CONCLUSION

Because the ALJ's decision is supported by substantial evidence and is free of harmful legal error, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 9 March 2018.

Brooke C. Wells
United States Magistrate Judge